Good morning. Good morning. Francisco Rodriguez appearing for Christina Black. We're here today because the administrative law judge in this matter rejected the opinion of every person who had actually encountered Ms. Black face-to-face. He rejected her treating physician. He rejected the opinion of three examining doctors, two mental health counselors, and Ms. Black's friend of 13 years. He did so purportedly in favor of the opinion of two reviewing doctors who reviewed only a portion of the record, never had the opportunity to observe Ms. Black or interact with her. This decision in general violates the agency's own rules, which prioritize the treatment relationship and personal contact with the claimant, for obvious reasons in general, but in particular in mental health cases because of the more subjective nature of mental illness. Ms. Black suffers from major depression that is chronic with psychotic features. She also suffers from an anxiety disorder, which has variously been characterized as PTSD or OCD or just a general anxiety disorder. She can't control her emotions. She experiences profound sadness, rage, paranoia. She has difficulty sleeping, sometimes not getting to sleep until 4 or 5 in the morning and waking anywhere from 11 a.m. to 3 p.m. She isolates in her room much of the time. She has flashbacks. She hears voices and has persecutory delusions. The ALJ never- Can I ask you a couple of questions? Yes. Help me understand one of the themes that runs through all of this, which is her admitted use of alcohol and marijuana and other related drugs. Yes. Now, there seems to be some inconsistency, unless I misread the record, in how that is viewed and what representations she made regarding her use and stopping when she was using it and when she was no longer using it. It's not entirely clear to me. Yes, and I think that- And the ALJ faulted the treating physician for not accounting for that. Well, the ALJ essentially believes that Ms. Black is using throughout. I mean, maybe there's brief periods, but the ALJ's conclusion that's apparent to me from the decision is he thinks she's abusing substances throughout. The fault that he finds in Dr. Woyna's evaluation is that he thinks that her evaluations are inconsistent because on the one hand, she says in her second evaluation, I think in November 2008, she says there's no issue of substance abuse. In the 2009 evaluation, she acknowledges substance abuse. And the ALJ says also the CPC records, the Community Psychiatric Clinic, has lots of evidence of substance abuse. However, as we point out in our brief, as far as what Dr. Woyna knew, everything that she knew was about past substance abuse. So her answer in the November 2008 evaluation may very well affect her belief that there's not an ongoing substance abuse problem. Apart from Ms. Black's credibility issues on inconsistencies in substance abuse, that's what Dr. Woyna knew. Now, by the 2009 evaluation, Ms. Black had disclosed ongoing marijuana use and was diagnosed with cannabis abuse. Now, the one thing the ALJ never mentions is the initial evaluation in June 2008, where Dr. Woyna acknowledges that she has in the past used these various drugs. It's in the evaluation. If we looked at the first two evaluations, to me, at worst, you have an ambiguity. When Dr. Woyna evaluated her that second time, was she saying, oh, I'm checking this box or I'm not checking this box because there's nothing ongoing, or because I've forgotten about the substance abuse, or, you know, why was that? And the remedy, if we only had those two evaluations, I think, would have been, given the priority that the Social Security regulations place on treating doctor, would be to send a letter or subpoena Dr. Woyna and ask her to reconcile. Was it air for him to have discredited her on that basis? I believe so, because you have the third evaluation, which if we had asked Dr. Woyna, her answer would have been the third evaluation, which he provides no – there's no inconsistency in the third evaluation. The third evaluation, she's now aware of substance abuse. She considers it in light of her prior decisions and specifically says, no, I don't believe these mental health symptoms are due to her substance abuse issues, and I don't believe that substance abuse treatment will solve this problem. So if you had an ambiguity and you were going to send it back to recontact the physician, you've already got that answer in the third evaluation. And if the inconsistency is, hey, what about this evidence in the CPC records? It's now accounted for in the third evaluation, and the ALJ doesn't acknowledge that. He misreads the evaluation and says that she failed to evaluate the impact of substance abuse. There's two answers to two questions that specifically address that. That is factually incorrect, that finding. Well, the other question I have for you is – so there's evidence in the record by several of these doctors that she suffers from anxiety. Yes. Now, that's not addressed by the ALJ. No. So how does anxiety – how does that fit in with her overall condition of depression and whatnot? Right, and I'm glad you highlighted that because I wanted to highlight it for the court. I realize it's placed further down in my brief, and I didn't want the court to think this is not a real significant issue or it's a throwing issue. It's a very significant issue. It's placed in the brief simply because it made logical sense to deal with the opinions in a certain order and then go to that issue. The way it fits in is, as you point out and I point out in my reply brief, there are extensive – there's extensive testimony in the lay witness testimony, in Dr. Woyne's conclusions, in the plaintiff's own – I mean, the claimant's own description about anxiety-related conditions. The ALJ doesn't mention the word anxiety in his opinion. No. He never gives any specific reason for rejecting that. So what's the impact of that? Because he does find another mental disorder. Well, first of all, anxiety disorders are an entirely different category of disorder in the DSM. It's not the same. It's not like, oh, well, you've got one mental illness, so you've got things covered. But if you look at the case law, specifically Edlund, what you find is when the ALJ made the finding that – I mean, the ALJ didn't make this finding, but you have to read this into the decision that he decided it's not severe. Well, as the counsel for the commissioner points out, that means he went through the screening device that's designed to dispose of groundless claims and disposed of anxiety disorder. That's a groundless claim under the ALJ's current ruling. So if he's found that it's groundless, it has no more than a minimal impact on her ability to work in his opinion. If that finding was erroneous, he cannot have properly weighed the anxiety disorder and the resulting limitations in his subsequent analysis of her RFC. He's basically dismissed this as irrelevant. And you can't then say, well, he was supposed to consider everything in determining the RFC, so he must have considered this, even though he undervalued it. Can we tell from the way he formulated the RFC that it would encompass anxiety-related problems? I – you know, it doesn't account for the various limitations that I identified in my reply brief. I mean, it's a lengthy list. And so I would say, no, there may be something that one could attribute to anxiety such – I mean, he doesn't really explain this, but his limitations relating to coworkers and supervisors saying you can't have more than occasional contact with them might be arguably related to anxiety. But that also could be related to her other problems. Right, that's what I'm saying. It's very hard to review this decision and come away with any degree of confidence that he even considered anxiety disorder. And could the failure to mention or analyze the anxiety disorder be harmless? Because isn't the question whether the inclusion of an anxiety disorder severe impairment would have impacted the ALJ's RFC assessment, or if it would have been inconsequential? Right, and that's why I would point you to the list that I go through in my reply brief of the limitations associated with anxiety disorder. If you can find that the ALJ's RFC accommodates all those things, then I suppose you could decide that it was harmless. That would be contrary to Edlund, which says that you shouldn't be speculating about that kind of thing. Once they've made an error and basically underestimated the seriousness of an illness, you can't say later that that mistake, they somehow recovered from it and reconsidered and gave it proper weight in considering the RFC. Well, given the lack of credit he gave to Dr. Weinmann's opinion. Right. Well, first of all, she's not the only one that identifies anxiety-related complaints. Both Diane Slinning, who he credits, and Ms. Black herself also identify anxiety-related limitations. But also, the reasons that you reject doctors' opinions have to be specific. Given that there's no evidence he even considered anxiety in his opinion, how can you say that he properly rejected Dr. Weina's lengthy list of anxiety-related impairments? I just don't think, even if you find that there was some inconsistency about substance abuse, that that is a categorical rejection when he doesn't even address the specific limitations. And I also want to point out with respect to the substance abuse issue, and I don't know if the court's interested in this, but the whole issue of the materiality of substance abuse seems to have caused some confusion throughout this process. And I pointed out gustamante in subsequent cases, and I just want to make sure that the court's aware that there was no requirement or need for Dr. Wein or any of the other doctors in this case to separate out the effects of substance abuse because the ALJ never reached the materiality question. And gustamante and other cases are clear on that, as well as the regulations. So I didn't want to half-answer your initial question if you meant to address that. No, I understand. Drug abuse can be a separate basis at the end of the analysis. I did want to reserve some time. That's fine. Thank you. Good morning. May it please the Court, Nancy Michelini for the Commissioner. Your Honor, Ms. Black paints a very sympathetic picture, and she presents a rational interpretation of the evidence. However, the ALJ also gave a rational interpretation of the evidence, and where there are two rational interpretations, the Court has to affirm the ALJ's rational interpretation. That assumes that he applied the correct standards in evaluating the evidence. That's correct, Your Honor, and I would submit to you that he did in this case. All of the objective evidence in this case shows that Ms. Black is capable of performing work activities. And after reviewing all of the evidence, the ALJ has the position of looking at everything. He has all of it in front of him, unlike the treating or the examining or other positions in the record. The ALJ has everything at that point, the testimony, all of the statements, all of the medical evidence. And so based on all of that, he fashioned an RFC, residual functional capacity, that accommodated her credible symptoms, that is the symptoms that he found credible. This really is a credibility case. The ALJ did not believe her allegations of the seriousness or the severity of the symptoms that she claimed. He gave clear and convincing reasons for finding that her allegations weren't credible. First, lack of medical evidence that supported her claims, both physical and mental. She had complained that she said she couldn't work because she had a backache. Well, but her claim was really a mental claim. Exactly. That's what her claim is all about. And that's what it came out to be. But she was alleging that she couldn't work because of other reasons. And the medical evidence did not support that at all. Well, do any medical sources support the ALJ's conclusion that Black is not disabled? Yes. The evidence, all of the objective evidence, and when I talk about the objective evidence, the only objective medical evidence in the record are the mental status exams and the psychiatric exams. And there are, I believe there are five of them in the record. The first one is when she first complains of depression. And that's with Dr. Fitzgerald. And granted, that's her medical doctor. And she first complained of depression even though her medical records go back to 2004. But she didn't mention it until 2008. And she said that she was depressed and it just began two months ago. And that was coinciding with her grandmother dying, by the way. Her symptoms, Dr. Fitzgerald said that her symptoms occurred in the context of financial worries, unemployment, and increased drug and alcohol use. Now, during her psychiatric exam that she conducted, Ms. Black was oriented to time, place, and person. She was not anxious or fearful. She had no mood swings. She was not agitated, no compulsive behavior. Which doctor is this now? This is Dr. Fitzgerald. And he's not a – he's her physician, right? Yes. He's not a psychiatrist or a psychologist? Correct. It's a medical doctor. And she is the one who referred her for mental health treatment. However, at that point, Ms. Black denied any hallucinations, denied any paranoia. She was not in denial. She said she didn't enjoy daily activities. She had normal insight and judgment, no flight of ideas, and no pressured speech. How old was she at that time? This is in 2008, and she is just almost 20. She turns 20 in March, and this is in January. So she's almost 20. So the next mental status examination – well, really, when she goes for her first intake exam at the CPC, she basically says, oh, I've just been having bad nightmares every other night. I'm just in a bad mood all day, and I just don't really feel like doing anything. She cried about her grandmother, who had recently died. But she had family for social support. She got adequate sleep. She took the bus for transportation. She had a dog she took care of. She visited with her sister, her aunt. She did job searching. She cleaned the house, and she assisted her mother, who has MS. And her goal, she told Ms. Crandall, that her goal was to obtain a CNA certification to be a care provider for her mother as her MS symptoms increased. She said that her multiple family members were supportive of her. Were there any medical doctors, though? I just don't recall that support the ALJ's conclusion, because you were pointing to records, and I'm just wondering if any of the physicians. And I started out talking about the mental status exam. And I'll just go ahead and go through all of those. The first one was with Dr. Fitzgerald. The second one was a DSHS evaluation. That's Department of Health and Social, Department of Social and Health Services, which is the state agency. Drs. McDuffie and Drs. Deese did mental status testing. She performed well on mental status testing. She was able to name three out of three objects immediately and after a five-minute delay. She did a normal digit span forward and backward. She was able to complete serial sevens with only two errors and serial threes with no errors. She correctly spelled world backwards. They said that her cognitive functioning was intact. Kathleen Anderson, this is the consultative examiner, she saw her in June of 2008. Dr. Anderson said she did well on the mental status testing at the interview. She was adequately groomed, subdued, but able to attend well to the interview process for an hour. She had good eye contact, no bizarre or inappropriate behavior. Thoughts were logically organized. She was fully oriented, named the current and last president correctly, knew the state capital and the states to the south and east. She did serial sevens quite rapidly, doing seven subtractions in about 25 seconds. She spelled world correctly backwards. She repeated a five-digit number backwards and then said that two pieces of fruit and apple in a line both had seeds. She recalled three out of three objects after three minutes. The next mental status is- And what was the final, I mean, you're passing over a lot. That was in Dr. Anderson's report. In the end, what does Dr. Anderson conclude? Well, Dr. Anderson concluded that as she is presenting today, I don't think she'd be able to be employed because history would simply repeat itself. Dr. Anderson talked about the drug use. There's fairly substantial substance abuse, and this may be contributing to her depressive picture. Up until a couple of months ago, she was drinking whenever she could, to the point of intoxication and blackouts. She continues to smoke marijuana on a regular basis. However, Dr. Anderson said on a positive note, she's had no treatment for her problems, and she just began therapy, so this could prove helpful. Equally important, she said she's never been treated with psychotropic medication, which she may benefit from. So Dr. Anderson was saying the substance use is really affecting her. The other thing about Dr. Anderson's evaluation here is that the first five pages of her report are simply recitations of what Ms. Black told her. What is a psychiatrist or psychologist supposed to do? Well, there are other tests that typically we see in these. And do we know if she was referred out by Social Security or by the state? By the state. And do we know if they asked for a specific test or just an evaluation? I believe it's just an evaluation. It's actually in the first pages. It's called the case development sheets. It's in the first part of that record where she's sent out. And, in fact, Ms. Black didn't show up for the first. Now, the ALJ discredited Dr. Anderson, correct? Well, she discredited the opinion that she couldn't work, because she said that she didn't have other records. She didn't have other records, for one thing, and that all of this functioning is based on what Ms. Black told her. And due to the fact that there was so much drug abuse. Do you think that Dr. Anderson at all based her opinions on her observations of Ms. Black during the interview? I think she could have, yes. Do you think that's what a psychiatrist does or a psychologist does during an evaluation? I think that that's part of what they do. Why isn't that objective? Well, she says she's adequately groomed, she's subdued, she's able to attend well to the interview process. So I guess her opinion is inconsistent with what she's seeing. Ms. Black, every time that she sees a mental health professional, she doesn't exhibit any bizarre behavior. I mean, sure, she's tearful, and she cries. I think everybody cries in counseling. And I'm not trying to take that away from her. She's a depressed person, and we can see that she is depressed. However, she's not so severely depressed that she can't work her past job as a dishwasher. I mean, that's what this really comes down to. She has to prove that she can't go back to her last job as a dishwasher. She's not even 20 years old, and she wants to be labeled disabled? Let me ask you about, before you go to Dr. Wojna, I'd like you to just, but as you do that, could you also deal with the question of anxiety? Yes, the anxiety I believe was diagnosed by Dr. Wojna, and that was initially at the first intake, as I recall. Did anyone else diagnose her with anxiety disorder other than that doctor, Wojna? I don't believe any other medical source did. Dr. Anderson did not, and she's an MD, a medical doctor. And you acknowledge that the ALJ didn't address or analyze the anxiety disorder? You don't see a discussion of it in the decision. That's correct. However, the RFC encompasses such a long… When I read this, when I saw this, how does anxiety manifest itself differently than her depression? How do they work together? How does it work together, and how does… Or how are they different? I mean, do they work together, or are they just… I think very often depression and anxiety come together. Come together? I mean, that's what we see very often in these records, is that they're together. Now, nobody addresses that, though. I mean, the ALJ doesn't address that. No, it doesn't. I mean, I don't know. I'm certainly not a medical. I'm not an expert in anything. Not to mention anxiety or depression. Nor am I, Your Honor. I'm not a medical doctor. But I have to say, with reading the records that we do, and we read a lot of them, you very often see depression and anxiety together. So what are we to make of the fact that the ALJ did not even mention it? Well, as far as Dr. Woyna, I mean, Dr. Woyna, he rejected her opinion based on the fact that it was inconsistent with other evidence, and the other evidence was all the evidence that he had just discussed. He doesn't go through and say, this is the evidence that it's inconsistent with. No, he didn't. Isn't he required to do that? Isn't that what we talk about, and it needs to be specific? I think he had just, prior to saying that, in the decision, unless, you know, you want these decisions to be like 40, 50, 60 pages long, then you have to, you know, go through and repeat all of the evidence that they just discussed. It's not my, you know, but should there have been a statement that he rejects the anxiety disorder? I mean, you're saying that's just implied in his criticism of Dr. Woyna? It's implied in his criticism of her because he, her, her diagnosis is really all based just on what Ms. Black is complaining of at that moment in time, on June 30th of 2008. She diagnosed the PTSD and mood disorder, NOS, which is not otherwise specified obsessive-compulsive disorder, and then she also discussed with Ms. Black, quote, the difficulty of a clear diagnosis in this unfortunately common constellation of symptoms. So at that point, it seems that Dr. Woyna is just kind of going, okay, it could be this, it could be PTSD, it could be, I mean she doesn't even, she doesn't even diagnose depression at that first intake. Let me add one other question before your time is up. Is it appropriate for the ALJ to rely on Ms. Black's inconsistent treatment history when her mental illness may have inhibited her ability to seek medical attention for her mental illness? Well, Your Honor, in terms of, I know counsel argued that, you know, she was 12 years old, you know, she's not going to know enough to go to the doctor, and that's not what the ALJ was talking about. He was talking about the fact that she's an adult. Once you turn 18, you're an adult. And here she is, she's 20 before she says that she even has a problem, and she says that it just started two months ago. That's how this all started. I would, just before closing here, I'd like to turn the Court's attention to the evidence in April of 2009, the 45th Street Clinic. That's really what I wanted to highlight, and I'm running out of time now. But she went in for a nutritional therapy appointment. I mean she's sort of missing in action in terms of CPC. There's no records between July of 2008 and September of 2009. There are no counseling records, so she's just sort of dropped out perhaps. But she is showing up to the 45th Street Clinic to get nutritional therapy. She said she'd gained 50 pounds since the previous summer due to not being as active in the winter. She had difficulty avoiding junk food offered by her family and friends. Her summer activities included going to festivals, walking her dog. She walked a minimum of 30 minutes a day to stores and bus stops. At the next visit, she said she was able to meet her goals. From the last appointment, she was able to exceed her goal of exercising for 60 minutes a week with light exercise slash sports one to three days a week. There's another in June of 2009. She comes in. She says she's feeling better. In general, she's doing better. She was walking 16-plus blocks a day, and she involved her mom. She's been using her home gym equipment to increase her exercise daily. She's been able to eat healthy throughout the month. Okay. I'll take another look at that, but your time is up. I'm sorry. That's okay. Counsel for the Commissioner does a very similar thing to what the ALJ does, which is pick out isolated details from medical opinions and reach a different conclusion. But they're relying on the reports of two psychiatrists, Dr. Anderson and Dr. Weiner, who actually met Ms. Black face-to-face. And everybody who met Ms. Black face-to-face assigned her a global assessment of functioning score of 50 or less. Global assessment of functioning reflects the severity and or functioning overall level. And you have all of them below 50, including the two lowest scores, the two psychiatrists, Dr. Weiner and Dr. Anderson. And those are just not addressed. If you're going to consider these opinions, you have to consider them in context. The same is true with Ms. Black's activities, all of these other things, to take a comment that she takes care of her mother and then not listen to what she says she does for her mother. That's not the legal standard the ALJ is required to follow. Another theme that goes throughout the ALJ's opinion and also through the Commissioner's argument is the search for objective evidence. That's a very difficult search when it comes to mental illness. We often refer to objective evidence in mental illness cases and we look to the mental status exam. The reality is the only component of the mental status exam that is truly objective is a test of cognitive functioning. Those things like serial sevens that can tell you if you've got some real cognitive problem. But other things are entirely, well, they're clinical judgments by the doctors. When we say in a mental status exam, appeared depressed, that's that person's subjective impression based on what they see. And so when we're talking about objective evidence, you're talking about a very, very short list. There's not a blood test. There's not an image that you can take for mental illness. We have to rely on the expertise of professionals in the field. And the social security regulations say rely most on the people who've actually met this person face-to-face. And the American Psychiatric Association guidelines that I provided to you explain you get much more out of a face-to-face interview than just the content of what someone says. And so when you say they've done a clinical interview, if you're going to say because they've done a clinical interview we can dismiss their opinion if the claimant turns out to not be credible, you're basically eliminating the entire hierarchy for evaluating medical opinions. Because now the reviewing doctors are the only opinions that matter because they didn't consider the subjective statements because they didn't meet the person. And so you must rely on them because they weren't swayed by those. They reviewed just paper records. Please remember that Ms. Black herself, while the ALJ and the commissioner want to characterize her as saying I'm constantly in this state, there's nothing in the record that says she's ever claimed that all of her symptoms are present all of the time. She says I have good days. Sometimes I have good weeks. The fact that mental illness symptoms appear more serious at some times than others is not a reason to dismiss those symptoms. And so you really need to rely on the expertise of these professionals. I have one last question for you. What is it you're asking from us? If you find that the ALJ improperly rejected Dr. Woyna's opinion, then I think, and or Dr. Anderson's opinion, depending on the reason, I think those opinions establish her disability. And even if you thought substance abuse was an issue, Dr. Woyna's 2009 evaluation addresses that. If you credit that as true, Ms. Black is entitled to benefits. Otherwise, I think the appropriate remedy would be remand. Further proceedings? Right. Okay. Thank you, counsel. We appreciate your arguments, counsel. Thank you very much. You're very helpful and very good. I appreciate it. We all appreciate it. That ends our session for the day and for the week, and we're finished. Thank you all. We'll be in recess. We're adjourned. All rise.
judges: Tucker, Paez, Murguia